**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Old Republic Insurance Company</u>

    v.                                        Civil No. 12-cv-256-LM
                                                     Opinion No. 2014 DNH 016

<u>Stratford Insurance Company</u>


**<u>O R D E R</u>**

In a case that has been removed from the New Hampshire Superior Court, Old Republic Insurance Company ("Old Republic") petitions for a declaratory judgment concerning: (1) its coverage obligations with respect to a motor-vehicle accident involving its insureds; and (2) the scope of its duty to defend its insureds in an underlying action that resulted from the accident. In the alternative, Old Republic seeks various forms of equitable relief. Stratford Insurance Company ("Stratford"), which also provides coverage for some of Old Republic's insureds, has filed a counterclaim for declaratory judgment. Before the court are cross motions for summary judgment. For the reasons that follow, each motion is granted in part and denied in part.

**Summary Judgment Standard**

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'" McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).

**Background**

This action arises out of litigation stemming from a motor-vehicle accident.  Specifically, in the United States District Court for the District of Connecticut, Daniel and Karla Bendor filed a complaint alleging that Antoine Girginoff jackknifed the tractor-trailer he was operating, struck their vehicle, and injured them.  The tractor Girginoff was driving was owned by Ryder Transportation Services ("Ryder"), and leased by Ryder to Gary Merrill d/b/a DAM Express Delivery Service ("DAM").  DAM, in turn, employed Girginoff.  The trailer he was hauling was owned by Coca-Cola Bottling Company of Northern New England, Inc. ("Coca-Cola NE").  The Bendors are suing Girginoff (for negligence, loss of consortium, and bystander emotional distress), DAM (for negligent entrustment, hiring, training,

supervision, and retention), Ryder (for negligent entrustment, hiring, training, supervision, and retention), and Coca-Cola NE (for negligence, loss of consortium, bystander emotional distress, and negligent hiring, training, supervision, and retention).  Old Republic is currently providing a defense to Girginoff, DAM, and Coca-Cola NE in the underlying action.

The lease agreement between DAM and Ryder contains a set of provisions regarding liability insurance, including the following:

> The party designated on Schedule A (the "Insuring Party") [i.e., Ryder] agrees to furnish and maintain, at its sole cost, a policy of automobile liability insurance . . . covering both you [i.e., DAM] and Ryder as insureds for the ownership, maintenance, use, and operation of each Vehicle ("Liability Insurance"). If you [i.e., DAM] are the Insuring Party, the terms of the policy and the insurer must be acceptable to Ryder.  The Liability Insurance must provide that its coverage is primary and not additional or excess coverage over insurance otherwise available to either party . . . .  The Insuring Party [i.e., Ryder] agrees to designate the other party [i.e., DAM] as an additional insured on the Liability Insurance . . . .

Pet'r's Mem. of Law, Ex. L. (doc. no. 26-14), at 3.  The lease agreement further provides:

> **Party Responsible for Liability Insurance**: Ryder. Combined Single Limits $1,000,000 per occurrence. Customer Deductable: $1,500 per occurrence.  You [i.e., DAM] agree that Ryder shall have the sole right to conduct accident investigations and administer claims handling and settlements and you shall adhere to and accept Ryder's conclusions and decisions.

Id. at 7.

To satisfy its obligation as the Insuring Party under the lease agreement, Ryder relied upon a Commercial Package Policy issued to it by Old Republic.  With regard to liability coverage, that policy obligates Old Republic to: (1) "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'," Pet'r's Mem. of Law, Ex. I (doc. no. 26-11), at 23; and (2) "defend any 'insured' against a 'suit' asking for such damages," id.

In a section headed "Other Insurance," the policy Old Republic issued to Ryder provides, in pertinent part:

> When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share.  Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Pet'r's Mem. of Law, Ex. I (doc. no. 26-11), at 29.  The parties agree that with respect to the tractor DAM leased from Ryder, Old Republic's coverage is primary.  Their dispute concerns whether a policy Stratford issued to DAM, described below, also covers any potential losses on a primary basis, which would trigger Old Republic's right to pay only its proportional share of any losses suffered by any insureds covered by both the

policy it issued and the policy Stratford issued (hereinafter "mutual insureds").

At the time of the Bendor accident, DAM was covered by a Commercial Lines Policy it had obtained from Stratford. That policy provided liability coverage for three categories of motor vehicles: (1) specifically described autos; (2) hired autos; and (3) non-owned autos. The policy describes "hired autos" as "[o]nly those 'autos' you lease, hire, rent, or borrow." Pet'r's Mem. of Law, Ex. J. (doc. no. 26-12), at 9. For its hired-auto coverage, DAM paid a premium of $400. See id. at 6. That premium was based upon DAM's report to Stratford that it spent approximately $5,000 per year on hired autos. Stratford has produced undisputed evidence that the figure DAM gave for its estimated cost of hire was based upon its projected rental of vans to augment the two-vehicle fleet of vans it owned and used for local deliveries. It is also undisputed that: (1) when Stratford issued the policy at issue, it did not know that DAM leased tractors from Ryder; and (2) DAM spent approximately $20,000 per month to lease those tractors.

With regard to liability coverage, DAM's Stratford policy obligates Stratford to: (1) "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident'

and resulting from the ownership, maintenance or use of a covered 'auto'," Pet'r's Mem. of Law, Ex. J (doc. no. 26-12), at 10; and (2) "defend any 'insured' against a 'suit' asking for such damages," id. at 11.  In addition, the Stratford policy includes a provision pertaining to "other insurance" that states, in pertinent part:

> This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. . . .  However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability Coverage is:
>
> (1)  On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto".

Id. at 21.

The accident giving rise to the underlying personal-injury action occurred on April 7, 2010.  The Bendors filed suit against Girginoff, DAM, and Ryder on December 8, 2010,[1] and Old Republic began providing a defense.  In March of 2011, an employee in Ryder's National Liability Claims Office contacted Stratford to ascertain Stratford's position regarding coverage for the Bendor accident.  After learning of that loss, Stratford

---

[1] Coca-Cola NE became a defendant later on, but the circumstances under which it did so have no bearing on the resolution of the issues before the court.

drafted, and DAM agreed to, the following retroactive endorsement to DAM's Stratford policy:

> CHANGES IN LIABILITY COVERAGE
>
> This endorsement changes the policy effective on the inception date of the policy.
>
> For a covered "auto" leased or rented to you by Ryder Truck Rental, Inc. DBA Ryder Transportation Services or any related entity, LIABILITY COVERAGE is excess over any other collectible insurance.

Pet'r's Mem. of Law, Ex. K (doc. no. 26-13), at 3. By letter dated December 1, 2011, a senior litigation specialist for Stratford informed Ryder that, under the endorsement quoted above, "[a]ny coverage provided to either DAM or Mr. Girginoff by Stratford is excess to the coverage provided by Ryder and/or Old Republic," Pet'r's Mem. of Law, Ex. N (doc. no. 26-16), at 3. On that basis, Stratford stated that it was "not . . . obligated to, and [would] not share in the cost of defending or indemnifying [the] mutual insureds at this time," id. at 4.

In Count I of its petition, Old Republic seek a declaration that

> [it] and Stratford have a co-primary obligation to defend Coca Cola, DAM and Girginoff and that [it] and Stratford will be obligated to share any indemnity obligation of Coca Cola, DAM and Girginoff on a pro-rata basis.

Am. Pet. for Dec. J. (doc. no. 15) ¶ 39. In Count II, Old Republic seeks "equitable . . . reformation of [DAM's Stratford]

7

policy in order to prevent unjust enrichment to Stratford based on its post-accident attempt to reduce its coverage obligations by retroactively amending its policy." Id. ¶ 45. Count III is a claim for unjust enrichment, and in Count IV, captioned "Waiver/Estoppel," Old Republic asks the court to rule that Stratford: (1) is "estopped from asserting any claims or defenses relating to insurance coverage that were not affirmatively asserted in its December 1, 2011 correspondence and should not be permitted to challenge coverage on any other basis," id. ¶ 56; and (2) "should not be permitted to retroactively amend its policy after learning of its insured's accident in order to manipulate the respective obligations of other insurers providing coverage and should be estopped from asserting the position that the Change Endorsement is valid thereby making its coverage excess," id.

In its one-count counterclaim, Stratford asks the court to declare that: (1) "Old Republic provides primary coverage for the liability, if any, of DAM, Girginoff, Ryder and/or Coca-Cola in the Underlying Action," Def.'s Answer & Am. Countercl. (doc. no. 16) ¶ 41; and (2) "Stratford provides excess coverage, if any, for the liability, if any, of DAM, Girginoff, and/or Coca-Cola in the Underlying Action," id. ¶ 42. Stratford also asks

the court to declare that Old Republic's duty to defend is primary to any such duty it may have.

## Discussion

Count I

Both Old Republic's Count I and Stratford's counterclaim arise under New Hampshire's declaratory judgment statute, which provides that "[a]ny person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive." N.H. Rev. Stat. Ann. ("RSA") § 491:22, I. The rights in dispute in this case are: (1) Old Republic's purported rights to pay only a proportional share of any losses suffered by the mutual insureds as a result the underlying action and to have Stratford assume a proportional share of the costs of defending that action; and (2) Stratford's purported rights not to provide coverage and a defense on a co-primary basis.

The facts underlying the parties' competing requests for declaratory judgment are complicated by a number of factors, not the least of which is the fact that at the time of the Bendor accident, Girginoff was driving a tractor-trailer composed of: (1) a tractor that Ryder owned and leased to DAM; and (2) a

9

trailer owned by Coca-Cola NE.  In an effort to clarify things, the court begins with a proposition on which both parties agree, namely, that with respect to insurance coverage, a tractor-trailer should be treated as a single unit.  See Am. Pet. (doc. no. 15) ¶ 26; Resp't's Mem. of Law (doc. no. 30-1) 19.  That issue has been thoughtfully addressed in an order from the Superior Court of Maine, in which Judge Pierson explained:

> In analyzing carrier liability arising out of the operation of a tractor-trailer rig, it is impossible to distinguish between that part of the liability that "arises out of" the use of the tractor unit and that part of the liability that "arises out of" the use of the trailer unit.  The liability "arises out of" both equally, and the tractor-trailer rig is treated as an indivisible unit.  See, e.g., Ryder Truck Rental v. United States Fidelity and Guaranty Co., 527 F. Supp. 666, 669-70 (E.D. Mo. 1981).  Where different insurers provide primary coverage to a particular insured with respect to his use of components of the tractor-trailer rig, the primary coverages are in conflict and the insurers generally share the loss.  Where different insurers provide excess coverage to a particular insured with respect to his use of components of the tractor-trailer rig and no insurer provides primary coverage, the conflicting excess insurance clause provisions are disregarded as mutually repugnant and each policy is considered primary.  Cf. Carriers Insurance Company v. American Policyholders' Insurance Co., 404 A.2d 216, 220 (Me. 1979).  However, when only one carrier provides primary coverage on either component of the tractor-trailer rig, this carrier is considered primary with respect to the entire tractor-trailer unit.  See Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 171 (3rd Cir. 1987).

U.S. Fid. & Guar. Co. v. Ledger, No. CV-91-049, 1993 Me. Super. LEXIS 411, at *6-7 (Me. Super. Ct. Jan. 6, 1993).  To resolve

the coverage dispute in this case under the principles described in Ledger, it is necessary to determine the nature of the coverage, i.e., primary or excess, that is provided by each of the two policies to each of the two components of the tractor-trailer that Girginoff was operating at the time of the Bendor accident.

### A. Coverage for the Tractor

According to Old Republic: (1) the policy Stratford issued to DAM requires Stratford to provide primary coverage for the Ryder tractor; (2) the endorsement describing Stratford's coverage as excess to Old Republic's coverage is ineffective; and (3) the "Other Insurance" provision in the Old Republic policy makes the primary coverage provided by that policy co-primary with the coverage provided by the Stratford policy.  Old Republic's argument on this point follows from a faulty premise; the Stratford policy, as initially issued, did not require Stratford to provide primary coverage for any losses that may ensue in the underlying action.  Thus, notwithstanding the amount of attention the parties have paid to the validity of the endorsement, there is no need for the court to reach that issue.

Under the common law of New Hampshire, it is well established that "[t]he fundamental goal of interpreting an insurance policy . . . is to carry out the intent of the

11

contracting parties." Great Am. Dining, Inc. v. Phila. Indem. Ins. Co., 164 N.H. 612, 616 (2013) (quoting Bates v. Phenix Mut. Fire Ins. Co., 156 N.H. 719, 722 (2008)). The starting point for determining the intent of the parties is the language of the policy. See Great Am. Dining, 164 N.H. at 616 (citing Pro Con Constr., Inc. v. Acadia Ins. Co., 147 N.H. 470, 472 (2002)). Here, the Stratford policy provided primary coverage for hired autos and defined the term "hired autos" to include autos that DAM leased. And, it is undisputed that DAM leased the tractor that Girginoff was driving at the time of the Bendor accident. Thus, read in isolation, the policy's coverage provision and its definition of "hired auto" would appear to provide primary coverage for the tractor that Girginoff was driving.

But, those two parts of the policy, on their own, do not fully express the intent of Stratford and DAM. Rather, it is necessary to examine "the policy as a whole." Great Am. Dining, 164 N.H. at 616 (quoting Deyette v. Liberty Mut. Ins. Co., 142 N.H. 560, 561 (1997)). The rest of the policy reveals that it was the intent of the contracting parties to provide coverage for autos that cost $5,000 per year to hire. It is undisputed that DAM spent approximately $5,000 <u>per week</u> to rent tractors from Ryder. Thus, there is no basis, in the language of the policy, for a determination that DAM intended to seek coverage

for the Ryder tractors from Stratford, or that Stratford intended to provide coverage, much less primary coverage, for those tractors. Such an interpretation of the policy is entirely consistent with provisions in Ryder's lease agreement with DAM that: (1) made Ryder, and Ryder alone, the party responsible for liability insurance; and (2) gave Ryder "the sole right to conduct accident investigations and administer claims handling and settlements," Pet'r's Mem. of Law, Ex. L (doc. no. 26-14), at 7.

Based upon the undisputed evidence, it is clear that the Stratford policy includes language that could be construed as providing coverage for the tractors DAM leased from Ryder precisely because neither DAM nor Stratford gave any thought at all to those tractors when they came to terms on the policy. When providing information on the scope of the coverage it needed for hired autos, DAM knew that Ryder was responsible for liability insurance on the tractors it leased to DAM, and DAM said nothing to Stratford about those tractors. Stratford, in turn, knew nothing about those tractors when it issued the policy to DAM. In sum, it cannot have been the intent of the parties for Stratford to provide primary coverage on a risk that DAM never sought to insure and that, by Old Republic's own admission, Stratford knew nothing about when it issued DAM its

policy and set the premium for it.  Thus, Old Republic stands alone in providing primary coverage for the tractor Girginoff was driving at the time of the Bendor accident.  Having made that determination, the court turns to the question of coverage for the trailer Girginoff was hauling.  See Ledger, 1993 Me. Super. LEXIS 411, at *6-7.

### B. Coverage for the Trailer

Old Republic argues that "[c]overage for the trailer is primary under the Stratford policy and excess under the [Old Republic] policy."  Pet'r's Mem. of Law (doc. no. 26-1) 24. Stratford contends that its policy "provides no coverage at all for the trailer."  Resp't's Mem. of Law (doc. no. 30-1) 18.  If Old Republic is correct, then its primary coverage for the tractor and Stratford's primary coverage for the trailer would be in conflict, with the result that both insurers would be obligated to share the loss.  See Ledger, 1993 Me. Super. LEXIS 411, at *7.  But, if Stratford does not provide primary coverage for the trailer, then Old Republic's primary coverage for the tractor is primary for the entire rig.  See id.

According to Old Republic, the Stratford policy provides primary coverage for the trailer because that policy: (1) provides primary coverage for the tractor; and (2) covers any trailer on the same basis that it covers the power unit to which

14

that trailer is attached. But, as explained above, the Stratford policy does not provide primary coverage for the tractor. Thus, Old Republic's argument fails. As there appears to be no other basis for ruling that the Stratford policy provides primary coverage for the trailer, the court concludes that it does not.

### C. Coverage for the Tractor-Trailer Rig

Because the Old Republic policy provides primary coverage for the tractor, and the Stratford policy does not provide primary coverage for the trailer, Old Republic's primary coverage for the tractor applies to the entire tractor-trailer unit. See Ledger, 1993 Me. Super. LEXIS 411, at *6-7. Accordingly, Old Republic is not entitled to a declaratory judgment that Stratford must share the mutual insureds' losses in the underlying action on a pro rata basis, and Stratford is entitled to a declaratory judgment that Old Republic's coverage for those losses is primary, as opposed to co-primary.

### D. Stratford's Duty to Defend

Old Republic asks the court to declare that Stratford is obligated to share equally in the costs of defending the underlying action, while Stratford asks the court to declare that Old Republic's duty to defend is primary to any such duty

it may have.  On this point, Old Republic has the law on its side.  In Universal Underwriters Insurance Co. v. Allstate Insurance Co., the New Hampshire Supreme Court explained that "the duty of an insurer to defend is the same whether its potential liability is either as a primary or as an excess carrier," 134 N.H. 315, 319 (1991) (citing Zurich Ins. Co. v. New Amsterdam Cas. Co., 160 S.E.2d 603, 605 (Ga. App. 1868); 14 Couch on Insurance 2d § 51:148 (rev. ed. 1982); Liberty Mut. Ins. Co. v. Home Ins. Indem. Co., 116 N.H. 12, 18 (1976)). Here, because Stratford concedes that its policy provides excess coverage, it is obligated to share equally in the costs of defending its insureds in the underlying action.

Count II

Count II is Old Republic's request that the court reform the insurance policy that Stratford issued DAM to exclude the endorsement that purports to make Stratford's coverage for the Ryder trucks excess.  Because the court's determination of coverage does not rely upon that endorsement, Count II is dismissed as moot.

Count III

Count III is a claim for unjust enrichment in which Old Republic asserts that

> Stratford wrongly secured a benefit or passively
> received one which it would be unconscionable for it
> to retain by retroactively amending its policy after
> learning of the occurrence of the underlying accident
> in order to include an endorsement purporting to make
> its coverage excess over coverage afforded under the
> policy issued by [Old Republic] to Ryder.

Am. Pet. (doc. no. 15) ¶ 50.  As with Count II, the problem with Count III is that it presumes a determination on coverage that is based upon the endorsement to the Stratford policy.  Because the court does not rely upon that endorsement, Count III is also dismissed as moot.

Count IV

Count IV is titled "Waiver/Estoppel."  However, that Count does not appear to identify a cause of action or assert a claim based thereon.  Old Republic seems to acknowledge as much, as it does not treat Count IV as asserting a claim in its motion for summary judgment.  Accordingly, to the extent that Count IV requires judicial resolution at all, it is dismissed.

**Conclusion**

For the reasons detailed above, Old Republic's motion for summary judgment, document no. 26, is granted, to the extent that the court declares that Stratford is obligated to share equally in the cost of defending DAM, Girginoff, and Coca-Cola NE, but is otherwise denied.  Similarly, Stratford's motion for

17

summary judgment, document no. 30, is granted, to the extent that the court declares that Stratford's obligation to cover any losses incurred by the mutual insureds is not co-primary with Old Republic's obligation to provide coverage, but is otherwise denied. The clerk of the court shall enter judgment in accordance with this order and close the case.

    SO ORDERED.

                                  _____
                                  Landya McCafferty
                                  United States District Judge

January 27, 2014

cc:   Philip A. Bramson, Esq.
       Naomi L. Getman, Esq.
       Richard C. Nelson, Esq.
       Laurence J. Rabinovich, Esq.